LAWRENCE F. BAUER and Others *vs.* JOHN W. BAUER and Others.

*Undue Influence—Voluntary Conveyance by Parent to Child.*

A voluntary conveyance of property from a parent to a child is not within the rule that when a confidential relation exists between donor and donee the burden of proof is on the donee to show that the transaction was a righteous one, but such conveyance will not be vacated except upon proof of the exercise of undue influence or fraud by the grantee, or the mental incapacity of the grantor.

Voluntary conveyances of her property, of small value, made by a widow of sound mind and strong character, to those of her children who were living with her, to the exclusion of other children who had not lived with her for some years, the conveyances having been made in pursuance of a long-cherished purpose on the part of the grantor, *Held*, upon the facts of the case, not to have been obtained by the fraud or undue influence of the grantees.

Appeal from a decree of the Circuit Court of Baltimore City (WRIGHT, J.), by which certain deeds were vacated and annulled.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Thomas S. Baer* (with whom was *J. W. Morrison* on the brief), for the appellant.

*C. C. Rhodes* (with whom were *Morrill N. Packard* and *Frank V. Rhodes* on the brief), for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This appeal is taken from a decree of the Circuit Court of Baltimore City vacating a deed to the defendants of a house on Baltimore street, dated the 10th of November, 1891 ; and a bill of sale to two of the defendants of certain personal property, dated the 19th of December, 1891. The

bill was dismissed as to a deed to two of the defendants of three small houses on Lemon street, dated the 12th of May, 1891, and from this part of the decree no appeal has been taken. The bill is filed by a brother and sister against a brother and two sisters, and charges that the grantor, the mother of the parties, was incompetent to make a valid deed or contract, and that the conveyances were obtained by fraud and undue influence exercised by the defendants. All of these allegations are specifically denied by the answers. The undisputed facts show that the grantor in the deeds was an old woman 74 years of age, and suffering from a cancer, which had been pronounced incurable by her physicians and from which she died on the 11th of January, 1892. She was a widow at the time of her death and left seven children and several grandchildren surviving her, all of whom except the defendants had left her house shortly after becoming of age, and only two of whom, a son and daughter, are party plaintiffs to this suit. She conducted a store and a scouring establishment and the property had been acquired by the joint labor of herself and the defendants. She gave to her two daughters, who were unmarried, the three houses on Lemon street estimated to be worth $1,200, and the furniture and store fixtures worth $150. The Baltimore street house which she had purchased in 1868, for $3,500, she gave to the three defendants equally. There were no exceptions to the large mass of evidence in the record, although much of it has no material bearing upon the case.

It is insisted on the part of the appellees that the relations existing between the grantor and grantees at the time of the execution of the deeds, were of such a character, as requires the application of the equitable doctrine, applied to gifts between persons standing in a confidential and fiduciary relation to each other.

It is well settled law that a gift or voluntary conveyance between parties standing in the confidential relation of child to parent is *prima facie* void, and can only be upheld upon proof that it was the free, voluntary and unbiased act of the

person making it.  *Whitridge* v. *Writridge*, 76 Md. 54.  This is so, because a child is presumed to be under the control of parental influence, as long as the dominion of the parent lasts, and whilst that dominion exists it lies on the parent maintaining the gift to disprove the exercise of parental influence, by proof that the child had independent advice or in some other way.

But a voluntary conveyance of property from a parent to a child rests upon a different principle and is not *prima facie* void.  It turns, says Mr. Pomeroy in his work upon Equity Jurisprudence, upon the exercise of actual undue influence and not upon any presumption of invalidity.  A gift from parent to child is certainly not presumed to be invalid.  *2nd Pom. Equity*, sec. 1399.  If, however, the confidential relation is shown by competent proof to exist, then the burden is imposed upon the grantee to show that the transaction was a righteous one.  In *Eakle et al.* v. *Reynolds*, 54 Md. 307, it was said, a Court cannot be too vigilant and cautious in considering the proof, and in determining whether the gift was the free, voluntary and intelligent act of the donor, yet the relation must be such as to imply dominion or control over the property or person of the donor and not such a relation which one might naturally expect to arise from kindship and mutual affection.

We have carefully considered the proof and find nothing in the record in this case to justify the contention that the defendants exercised such dominion over their mother as to bring this case within the rule law contended for by the appellees.  On the contrary, the proof is abundant that she was a woman of great resolution and firmness of character, and maintained control over her business affairs and family up to the time of her death.  What then is the proof as to the mental capacity of the grantor to make a valid deed or contract?  Dr. Conlyn, the family physician who attended her in her last illness; the three justices of the peace who took the acknowledgement of the deeds; her brother, Mr. Ortwine; one of her daughters who was a

witness for the plaintiff, and four other witnesses other than the defendants in the case, who saw her frequently and knew her well—all testify that she " was mentally sound and capable of making a valid deed or contract." Indeed, the testimony as to her mental capacity at the time of the execution of the deeds is so very conclusive, we deem it unnecessary to consider it further here. As to the remaining question then in the case, and that is whether the deeds were the free and voluntary act of the grantor or whether they were procured by fraud and undue influence. Now, according to the testimony, the grantor was a woman of strong will and force of character, and maintained control over the defendants in the management of her business to time of her death. The disposition of her property was not only such as she had determined to make years before, but after making the deeds, she spoke to persons about it, and gave her reasons for so doing. Mr. Ortwine, one of her brothers, who called to see her a short while before she died, testified that she talked to him about the children who had remained home with her, and stated that she had conveyed the property to them. And in conversation with Mrs. Sinclair and with Mrs. Mayer, she stated that she had deeded her property to three of her children, and gave as a reason that those children, especially the girls, had given her all their earnings and their time ever since they had reached age ; that she had done what she thought was right and just ; that they would have no support when she died, and that the others had their husbands to support them. And in conversation with her daughter, Mrs. Randall, one of the plaintiffs in the case, eight years before her death, she had declared her purpose of so disposing of her property.

We find nothing in the record except in the testimony of the plaintiffs and of Mrs. Edelman, their sister, which tends to sustain the charge of undue influence, and whatever was material in their evidence was directly contradicted by other witnesses in the case. The disposition she made of

her property was a natural one, under the circumstances of this case, and the reasons she assigned in her lifetime, for so doing, were proper and reasonable. There is no evidence connecting the two female defendants with exercising any undue influence over their mother or attempting to fraudulently procure the execution of the deeds. And the proof when taken in connection with other facts in the case is not sufficient to justify a Court in striking down these deeds, as procured by fraud or undue influence exercised by the defendant Lawrence. As was said by this Court in *Eakle* v. *Reynolds*, 54 Md. 311, a voluntary gift made by a capable donor in pursuance of a long-cherished purpose to a favorite nephew negatives the suspicion of fraud and undue influence, and a Court ought not to set aside a deed made under such circumstances, except upon proof of the strongest and most conclusive character. And the term undue influence as used in this connection, means a deed executed in pursuance of suggestions made by others and not upon the suggestions of the donor, and in pursuance of well-settled and often-declared purposes.

For these reasons the decree below will be reversed in so far as it vacates, sets aside, and declares null and void, the deed dated the 10th of Nov. 1891, from Elizabeth Bauer to the defendants Lawrence, Mary L. and Mary C. Bauer, and the bill of sale dated the 19th of Nov. 1891, from Elizabeth Bauer, to Mary L. and Mary C. Bauer, and the cause remanded, to the end that a decree may be passed in accordance with this opinion.

> *Decree reversed and cause remanded*
> *with costs.*