WALTER M. FALKENHAGEN v. MONTEVIDEO BUILDING & LOAN ASSOCIATION.[1]

February 25, 1938.

No. 31,480.

[1]Reported in 278 N. W. 32.

*W. W. Merrill,* for appellant.
*John C. Haave* and *Fosnes & Rolloff,* for respondent.

HOLT, JUSTICE.

Defendant is a domestic corporation organized in 1894 as a local mutual building and loan association under G. S. 1894, §§ 2855-2902, inclusive. At the time of its organization, P. J. Falkenhagen, the father of plaintiff, and one of the incorporators, procured a certificate for two shares of defendant's stock of the par value of $100, to be issued in the name of plaintiff, then three years old. At a regular meeting of defendant's board of directors, held July 31, 1903, a resolution was duly adopted declaring that all the shares in the first series of its stock, which included the two shares in suit, should mature and be payable September 1, 1903, and all holders of such stock were notified of the action taken. September 9, 1903, defendant's secretary drew an order on its treasurer for the payment of these two shares, and the books of defendant show full payment thereof September 30, 1903. Plaintiff, having come into possession of the certificate for the two shares mentioned, presented the same for payment to defendant in February, 1934. Payment was refused, and this action followed. The complaint, declared on the certificate, alleged a tender to defendant thereof and a written application for withdrawal of the money due thereon, pursuant to L. 1933, c. 100. The answer admitted the issue of the certificate, alleged that the shares were subscribed for by P. J. Falkenhagen, and set out certain provisions of defendant's by-laws, under which it duly declared the shares matured and payable September 1, 1903, that payment was demanded and received, and that the stock was retired September 30, 1903. The answer also alleged that plaintiff became 21 years old in 1912, and since arriving at majority he has instituted no action or proceeding upon the certificate until this suit was brought in April, 1934, and pleaded the statute of limitations as a bar. The main facts were stipulated. The only witnesses called were plaintiff and a brother. The court made find-

ings. A motion for amended findings or a new trial was denied. The appeal is by plaintiff from the judgment of dismissal on the merits.

The findings of fact are rather lengthy, but the substance thereof may be thus stated: When defendant was organized in 1894, the father of plaintiff subscribed for two shares of its stock, and a certificate therefor was issued in the name of plaintiff, then three years of age. All dealings in relation to these two shares were between defendant and plaintiff's father, and the certificate was always retained by the father. When defendant declared the stock matured, the court finds that full payment thereof was made to the father. This is an inference from the books of defendant which showed that payment was made September 30, 1903. However, they do not show to whom payment was made. Both the secretary and treasurer, at the time of payment, since have died, the secretary in 1919 and the treasurer in 1917. The father of plaintiff died July 29, 1929. There can be no doubt from this record that the inference is correct that the shares were procured from defendant by plaintiff's father, that he always had possession of the same, and received payment when the shares were matured. The inference is also permissible that the certificate had been mislaid by the father, and that the officers of defendant had been prevailed upon to pay the amount due upon maturity and retirement of these two shares without the production and return of the certificate. Alfred, a brother of plaintiff, testified that in 1932, in going over his father's old papers and books of account (kept in a box) preparatory to destroying the same, he found this certificate in an envelope. The envelope was not preserved, but he gave the certificate to plaintiff. Plaintiff testified thus:

Q. "When did you first learn that you had this stock, that that was issued to you?

A. "Well, I knew the stock was in existence at the time it was being paid for.

Q. "How old were you at that time?

A. "Well, I was old enough to realize that we really owned the stock [we, referring to his brother Jay, in whose name a certificate for two shares was also in the envelope found by Alfred]. We were told by the folks that we had the stock and knew that the payments were being made. That was discussed several times.

Q. "Now, from that time on did you ever hear of it until such time as your brother gave you the certificate?

A. "Yes, after the stock matured we had talked about the stock on a couple different occasions, but my Dad didn't know where it was. He thought it was in a safe deposit—

Mr. Fosnes: "Move to strike that out as no foundation laid; it is a conversation with a deceased party.

The Court: "Sustained."

Whether the court struck out more than the last sentence of the last answer is left in doubt. But, in any event, the record is clear that plaintiff had full knowledge of the facts respecting his claim to the stock represented by this certificate in 1912, when he became of age, yet he never demanded of defendant either dividends or interest thereon, or made any claim or demands on defendant as owner of these shares, until three years after his father's death. We think the statute of limitations [2 Mason Minn. St. 1927, § 9191] barred plaintiff's cause of action. By its articles of incorporation defendant's life terminated 30 years from May 1, 1894.

Plaintiff relies on Bergman v. St. Paul Mut. Bldg. Assn. 29 Minn. 275, 13 N. W. 120. That was an action to enjoin the defendant from retiring shares of its stock not fully paid up, wherein it was held that neither the statute under which the defendant was incorporated nor its articles of incorporation authorized the adoption of the by-law under which the defendant proceeded. In the instant case defendant was organized as a local association confined to the county of Chippewa and "adjacent and adjoining counties." Its capital stock was $500,000 and not $2,000,000, as provided by L. 1891, c. 131. Its articles of incorporation (IV) provide: "The directors may retire and cancel, under rules established by the by-laws, any unpledged shares four or more years old, the same to be taken pro

rata, as near as may be, from the oldest outstanding series." During all the time here involved this by-law was in force: "That the directors of the company have power and authority to retire any unpaid shares of stock four years old or more at their actual value, the payment to be made pro rata from the oldest outstanding series." The two shares here in suit were from the first series. We find no statute applicable to defendant which is contrary to the article or by-law quoted. So no property rights of plaintiff were violated, conceding that he was the owner of these two shares (as a gift from father to child, Jenning v. Rohde, 99 Minn. 335, 109 N. W. 597), when the board of directors, pursuant to the articles of incorporation (art. IV) and the by-law of defendant, passed the resolution to pay, cancel, and retire said shares as of September 1, 1903. It must be held that long prior to the commencement of this action the statute of limitations had run against it.

Judgment affirmed.

Mr. Justice Stone, because of illness, took no part in the consideration or decision of this case.

