## STATE v. ROBERT STOCKTON, ALIAS ROBERT CLARK.[1]

November 28, 1930.

No. 28,200.

[1]Reported in 233 N. W. 307.

*John J. O'Brien,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Floyd B. Olson,* County Attorney, and *Joseph A. Poirier,* Assistant County Attorney, for the state.

LORING, J.

Defendant was convicted of the crime of robbery in the first degree committed on the 18th day of February, 1929, in robbing a grocery store in the city of Minneapolis. The defendant was a convict out on parole at the time the robbery was committed. About two months after the robbery the defendant was returned to the state penitentiary for violation of his parole. He finished the sentence that he was then serving, and one year after the robbery was committed he was arrested and charged with the commission of the offense of which he was convicted in this proceeding. Upon the trial the proprietor of the grocery store and two young boys who were customers at the time that the robbery was committed were the principal witnesses against the defendant. They testified that he was one of the two men who robbed the store. Defendant denied that he took part in the robbery and attempted to show that he was at home with his foster father at the time the robbery was committed. Neither he nor his father could say definitely where he was at the hour of the robbery, but asserted that it was his usual custom to be at home at that time. The robbery took place at about 6:45 p. m. and the defendant's foster father testified that defendant always came home for supper. The evidence raised a definite question for the jury as to the identity of the defendant as one of the persons who took part in the robbery.

█ In cross-examining one of the witnesses for the state **the** defendant's counsel showed him the picture of a man by the name of Invie, who somewhat resembled the defendant, and asked the witness if that was the picture of the man who robbed the store. The witness responded that it was not. The picture was not then offered in evidence. Upon cross-examination of the defendant the prosecuting attorney then inquired, over the objection of the defendant's counsel, who Invie was and where he was. This elicited the response that Invie was a prisoner in a Pennsylvania penitentiary serving a sentence for murder and that the defendant had in April, 1929, gone down to Pennsylvania for the purpose of taking money for the defense of Invie and two other men by the name of Halverson and Bard, who were evidently indicted for the same offense. There was no showing whatever that any of these three men had any connection with the Minneapolis crime, and the state went into this matter for the purpose of discrediting the defendant on account of his associations with these three men whom he admitted to be his friends. The defendant assigned as error the admission of this testimony over his objection. He also assigned as error the conduct of the prosecuting attorney in his reference to these men as associates of the defendant in his closing remarks to the jury. Amongst other things the prosecutor said:

"Now, who is Stockton? Stockton is a man who consorts with Bard, a murderer and thief. That is his friend number one. He consorts and associates with Halverson, murderer and thief number two. And then he consorts with Invie, murderer and thief number three. An officer who is sworn to protect the rights and lives of the citizens of Pennsylvania lost his life."

There was more along the same line. This language was excepted to by the defendant, but the jury was not told to disregard it. We are of the opinion that the admission of the evidence in regard to Invie, Bard, and Halverson was prejudicial to the defendant and together with the remarks of counsel deprived him of that fair and impartial trial to which he was entitled notwithstanding he was an ex-convict. Prosecuting officers should understand that it

is part of their duty to conduct trials with fairness to the rights of defendants.

■ The state claims that the defendant put his general character in issue when in response to the question on cross-examination he said that he had never robbed anybody. A remark of this kind does not put the character of the defendant in issue. State v. Nelson, 148 Minn. 285, 181 N. W. 850.

■ In April, 1929, when the defendant was returned to the penitentiary for breaking his parole, a police officer found in his desk in the office where he was working a revolver which was introduced in evidence upon this trial for robbery. It was not shown to have any connection with the robbery or to be identified in any way therewith. The evidence of the state did not show that the defendant was armed at the time it is claimed he took part in the robbery. We are of the opinion that the admission of this revolver in evidence against the defendant was prejudicial error. People v. Yee Fook Din, 106 Cal. 163, 39 P. 530; People v. Riggins, 159 Cal. 113, 112 P. 862.

■ At the same time there was found in a car which the defendant was evidently using a pair of new Iowa license plates. The car did not belong to the defendant, and no connection between these license plates and any activity in connection with the robbery was shown. They had some connection with a car sold by defendant to Invie. The court admitted them in evidence as we think improperly.

■ Error is also assigned on the failure of the court to define the crime of robbery in its charge to the jury. Under the decisions of this court this would not be reversible error in the absence of a request from the defendant for such a definition. But we cannot approve the practice of submitting a criminal case to the jury without giving a definition of the crime with which the defendant is charged.

The evidence to sustain a verdict of guilty was ample had the trial been fair and impartial. It was not.

The order denying the defendant's motion for a new trial is reversed.